May it please the Court, I'm John Corzine from the Wake Forest Appellate Clinic. Under Local Rule 46A, it's my pleasure to introduce the student who will argue and the other student who appears on the briefs, which is Adam McCoy and also Hannah Monson. Thank you very much. We're very glad to have him. Thank you. My name is Adam McCoy and I represent the appellant in this case, Mr. Therl Taylor. Mr. Taylor filed three actions under Section 1915 of the Prison Litigation Reform Act. Under this section, he filed these actions using informed apoperous status, which allows him to file the actions without prepaying a $505 filing fee. These three actions were dismissed at the district court level, meaning that Mr. Taylor would not have access to an appeal without informed apoperous status because he would have received three strikes. We ask this court today to hold that Mr. Taylor can appeal the imposition of his third strike using informed apoperous status so that he can access the appellate court and have that strike reviewed by this court. We ask this court to hold this and follow its precedent from the case of Hensley v. Keller, a case decided in 2012 when this court held that the third strike could be reviewed when it was on appeal. The court held that when a prisoner received three strikes under the Prison Litigation Reform Act, if he sought to appeal his third strike, he did have a right to have that strike reviewed using informed apoperous status so he did not have to prepay the filing fee. The court held this because it looked at the purpose of Congress's intention in enacting the statute. When Congress enacted the Prison Litigation Reform Act, its goal was to eliminate frivolous lawsuits and keep the courts from being flooded with many prisoner suits that they could just use to clog up the court system. However... ...Coleman, there were parts of it that criticized this. To what extent is the Hensley case still good law? Your Honor, it's still good law for two main reasons. First, the facts in the two cases are distinctly different. The facts in the Coleman case were that the plaintiff in that case had filed three suits and received three strikes. He appealed his third strike and then tried to use the time while his third strike appeal was pending to file many additional actions. So he sort of used it as a backboard where he could file more and more actions during that time. And the Coleman court said that the PLRA was not designed to allow him to do that. We don't contend with that part of Coleman or say that that's incorrect. However, in Hensley, it's very different and it's very similar to the case we have with Mr. Taylor where the plaintiff there only saw appeal of his third strike. And in Coleman, the court specifically did not reach that issue. At the end of the opinion in Coleman... But you agree that in our case laws, fairly robust on this, that where the Supreme Court rejects our reasoning, that law is no longer good. And unlike where we're trying to figure that out, Coleman's actually a case where they quote our language and our reasoning and sort of quite expressly reject it. Well, Your Honor, the primary citation to Hensley in Coleman is early in the case where the court's summarizing sort of the standard approaches to the PLRA in the sense of different courts have approached it in different ways. But the part of Hensley that Coleman would have rejected would be an approach where the third strike is completely not counted for him. But Coleman quotes, right, this ambiguity, Hensley was based on this idea of ambiguity, could be a single moment or a continuing event. And that's exactly what's quoted. And then Justice Breyer says, we find it difficult to agree linguistically. Nothing about the phrase paracasion would allow it to do that. It seems like to me, I mean, you may have an argument on the grounds that it's problematic. And so I'm just curious, after you get past Hensley, I'm sort of more interested in on the merits, and I don't want to speak to my colleagues, but on the merits, why you're right. Because I do believe Coleman reserves the question you've got, but I want to understand in light of Coleman, why we get it. Well, looking at that, Your Honor, the interpretation that Justice Breyer gave prior occasions there, we interpreted that a district court opinion and an appellate court, or a district court dismissal, and an appellate court dismissal could count as separate strikes, does not preclude allowing for the appellate review of the third strike. So envision a situation where the first strike counts at the district court level, then that strike is appealed to the appellate level, and then that appellate court dismisses it as frivolous. That would be a second strike. And then you would have a third action filed at the district court. And if that's dismissed, if the appellate court doesn't appeal that strike. And looking at the reasoning from Coleman, part of the reason that they found that the district court opinions counted, even if they were appealed at certain times, was because of the banality of a district court judgment. The court said that judgments at district courts are traditionally treated as final, therefore they would count them as strikes. However, it's important to note that the third strike here would become completely unreviewable if the prisoner cannot receive. And that's a great policy argument, but Coleman tells us that we treat trial and appellate stages as distinct. And your hypothetical gets us there, right? If the dismissal and the appeal are distinct, they're distinct occasions, right, under Coleman, why do we think the occasion, when we get to the third one, somehow now we've combined the trial and appellate level. I mean, that's what you're trying to say is those are a single occasion. I understand the policy argument as well, but help me understand how under the language that we're looking at in 1915, how in the first instance, the trial and appellate level are two distinct occasions, but in the third example you give, you combine those into a joint occasion, or a simultaneous occasion, or I'm not sure what words you want to use. Well, Your Honor, it would be because the third one, it becomes unreviewable, and the PLRA was never intended to create a case that never received review. So the reason that the third one is treated differently is because that first one, or second one, can still receive review. So it can be treated in that completely separate way. We're not asking the court to think of it necessarily as two completely, as the fact that they, changes the way we view it. It's just that the third strike should still be able to receive review, and it can if the prisoners closed off from IFP status. And in essence, the argument, as I understand what you're saying is, we shouldn't intend, we shouldn't, you know, believe that Congress would have intended that result, despite the language that we've got and the Coleman decision interpreting it. Well, that's right, Your Honor, that Congress did not intend to completely eliminate the appellate function for that third strike. I mean, Congress has granted an appeal as of right in 28 U.S.C. 1291, and had they intended to eliminate the ability to appeal something completely, said so explicitly, rather than leaving it as an ambiguous determination to be made from the determination of the language there. And I'd also like to point to- So what do you do with the fact that Congress did create an exception to 1915, right, for, you know, life or limb at injury, right? So they create this one exception, and generally we think when Congress creates an exception, that we're not going to read in additional exceptions, because they sort of thought through what they think exceptions are. Well, Your Honor, that exception doesn't allow for appeals of other critical issues that may be faced by prisoners. The prisoners could still have their constitutional rights violated and have serious issues come up that they wouldn't have access to the courts for, just because that exception exists. But that's also going to be true for, you know, the fifth time when they go to file a new case in district court. I mean, they may well have really legitimate concerns, right? I mean, just because you've screwed the first four, maybe the fifth one's really legitimate. But, you know, Congress gets the ability to say, even if it's really good, you don't get to look, at least without paying. You get to show up, you just got to pay. Exactly, Your Honor. And we understand that prisoners are aware that there is a limit, and we're not asking to operate outside of that limit. So they still only get the three strikes, but the third one shouldn't become a special, unreviewable strike. And that Congress, while they may have specifically looked to safety concerns with exception, wouldn't have even anticipated that they have to allow for the most basic function of an appellate court, which is to review a case that goes into the district court. And so Congress, so when a prisoner files an action, there's an expectation that they'll have ability to have that reviewed, and that the district court decision won't be ossified in a way where it can't be reviewed, even if there's a difference from other courts that have interpreted this provision of the PLRA post-Coleman. The Ninth Circuit, in the case of Ritchie v. Don in 2015, again, this is after Coleman had been decided, interpreted this section of the PLRA to allow for review of the third strike. The Ninth Circuit there emphasized that the PLRA was never intended to ossify district court errors, and a denial of IFP status would do just that for the third strike. It's particularly worth noting in that case that the Ninth Circuit held that if it had not been able to review that third strike, that it would have had to leave an error in place. Because it determined that it could review the strike, it found that the district court had erred in its determination that the strike below was frivolous, and therefore it overturned it. The prisoner received his third, or had his third strike removed and could have Additionally, in two unpublished cases since Coleman, the Tenth Circuit, in 2015, in a unanimous opinion joined by then-Judge Gorsuch and Burnett v. Miller, the Tenth Circuit said, quote, we do not read Coleman to prevent our consideration of the propriety of that strike at the threshold of this appeal. And then again, in Dawson v. Kaufman in 2016, the Tenth Circuit held this missile was not considered prior if it's in the decision that's underlying the case that's on appeal. So these are, again... If Congress passed a statute, counterfactual, but they passed a statute that said any time a case is dismissed as frivolous from a prisoner, different from our statute, there can be no appeal. Right? Just like a flat bar on appeal. Could they constitutionally do that? Yes, Your Honor. I believe that the Constitution allows Congress to pretty much set the jurisdiction of federal appellate courts. So it's key that they didn't do that here. They didn't want to prevent the prisoners from having the ability to have their cases appealed, because otherwise that would leave this possibility that you have these decisions that are left in place. And I'd just like to emphasize that if the prisoners don't have IFP status for the appeal of their third strike, then essentially that won't ever be appealed and won't ever be reviewed. The filing fee of $505 is forced to be paid up front without IFP status. Now, Mr. Taylor and prisoners who have that status are not asking for a free appeal. They just get the opportunity with IFP status to pay it out over time instead of having to pay it all up front. And if they have to pay it up front, that's $505. Mr. Taylor's a prisoner in the state of South Carolina where inmates are generally not Federal Rule of Appellate Procedure 4A1A requires that the appeal be filed within 30 days of the district court judgment. So the odds of a prisoner being able to accumulate that money are functionally impossible. So the appellate court review of a third strike is foreclosed for a prisoner who doesn't have IFP status. And that runs a serious danger. As I've already mentioned, in Ritchie v. Don, the 9th Circuit found that the clinic has twice been appointed to cases in this court, in Foncier v. Clark in 2016 and Roudabush v. Milano in 2017. Both times our clinic represented prisoners who had their strike overturned by this court. And if they had not had an IFP, if it had been a situation where they didn't have IFP status and couldn't have applied, then those are district court errors that would have forever stayed in place. So there's a one of the strikes that was before it and overturned them. So again, Your Honors, I'd just like to emphasize that and also point to a fact that in the Coleman case, the Solicitor General there argued that while, took the position that we agree with, that you can't file extra suits while your third strike is pending on appeal. The Solicitor General in their brief did argue, and Justice Breyer even pointed to this in his opinion, that the third strike should receive appellate review and that the Solicitor General wanted to make sure that that was clear, that they did not intend for the third strike to go unreviewed. And that was again because dismissals from district court decisions are not typically given preclusive effect if the circumstances render the judgment unreviewable. And that would be the case here if the third strike could not receive IFP status. So once again, Your Honors, just to emphasize that we do believe that Hensley is still a good law and that Hensley still applies in the sense of the focus of Hensley was on that ability to review the third strike and not the ability of a prisoner to file intervening additional lawsuits. The Supreme Court in Coleman had focused a significant portion of its logic on this attempt to avoid creating a leaky filter. That's particularly the words that Justice Breyer used, that a leaky filter would have come up where the third strike would be pending and prisoners could just flood the court. That is not a risk here. It was not a risk in Hensley. The court in Hensley didn't. In fact, the court in Hensley in a footnote even anticipated the situation of Coleman in a sense in saying that it could imbue a situation where a prisoner tried to use that window while the third strike was pending to even appeal an earlier strike. And the court in Hensley said that's not what it intended. Its intention was to allow for review of that particular third strike because that's the one that would go ahead and receive IFP status for the appeal of his third strike and to hold that the PLRA continues to allow this court to perform its appellate function. Thank you. Thank you very much. Good morning. It's a pleasure to be here. It really is. My name is Skip Harden. I'm an attorney from Columbia, South Carolina with the McKay firm. With me today at the council table is Keith Taylor from our firm also. This Mr. Taylor is unrelated to the appellate Mr. Taylor in this case as far as I can tell. I have to oppose Mr. Taylor and gone through quite a bit of history. I'm sorry. I have the same problem. I'm glad you made a disclaimer of kinship in South Carolina. You never know. You have to be cautious about it. May it please the court. The question here today is may an indigent prisoner appeal in the district court's imposition of his third strike proceed in form of paupers. We believe Coleman has in essence as they said in the third circuit issued a sea change here. Things have changed since Coleman. Didn't the Supreme Court particularly reserve this question? They certainly did not agree with much of our reasoning. Have you seen the Solicitor General's brief? Yes, ma'am. So maybe you could pretend that that is, tell me why they are wrong, why the Solicitor General is wrong in our exact question here today. And they say Justice Breyer writing for an unanimous court looks at it and says well that question isn't before us, but he immediately turns to, he uses the quote defined phrase prior occasion right at the end of that sentence. Prior occasion is unfortunately the appellant's opinion today that I don't see any way around. I believe that when you take where they were going and looking at that hypothetical and you take their definition of prior occasion, which is earlier in the opinion, you can only reach one conclusion which is that the civil actions, the appellant actions as defined in 1915 G are separate and distinct actions. So those are things that aren't. You might be addressing my question, but I'm not sure if you are. Let me try it again. So the Solicitor General says the district court's dismissal is an occasion for both purposes. But from the perspective of the Court of Appeals deciding whether to grant informer pauper status on an appeal from a third strike, it is a prior occasion. So that's the distinction that the Solicitor General is making. He says it's an occasion, but the appeal from the third strike is not a prior occasion. For example, often when you see opinions from this court, you'll say this action was filed. Just the whole action. It wasn't filed in the Court of Appeals. It was filed in the district court. So it's one action. It's not a prior one. That's the distinction it seems to me the Solicitor General is making. I think the Solicitor General's opinion, the way he set it up in the brief, he agreed with everything that ended up in common except for that one issue. But when you look at the way the prior occasion relates, you've got to run those words together. And that the occasion is an event. I understand. But then why, if you're right, then why did they reserve this question? I'm sorry? If you are correct, why did they reserve the question? Well, I think they did everything but reserve. Well, frankly, I've never seen an opinion really quite like this. I haven't read every Supreme Court opinion. But they spend a lot of time in the beginning of the opinion saying how our rationale is wrong. And then they spend a whole section reserving the question of whether it actually, in one specific instance, was correct. Yes, ma'am. And as is making is that the Coleman case expressly said, need not and does not decide whether this prior is something they need to deal with. When you look at the Coleman case, the way I can make this out of it is treating the word occasion. And it goes after the whole manner which Hensley addressed the case. But when it got to prior, it had expressed language that prior means that the district court dismissal qualifies as a strike only if it occurred in a prior different lawsuit. Yes, Your Honor. And that's Coleman. So Coleman, this question here, it could go your way. It didn't mean that they were going away with other, but Coleman says we're not deciding. Coleman said we're not deciding because that specific fact wasn't in front of them. I believe if the Supreme Court had been in front of the court with the same arguments and the same situation, we wouldn't be here today. I believe that the Supreme Court would have ruled with the same rationale, the same plain language analysis that they used in Coleman would have ruled, in Taylor's case, would have ruled him as a third strike and not able to appeal under IFP status coming to this court. And if you look at... But the problem we have is the Supreme Court has put our precedent here in Hensley on that point. We can't overrule it either. It is circuit precedent. As I understand, it's... Independent of that, they not only didn't overrule it, they expressly reserved it. Yes, Your Honor, I agree with that. But isn't it true that where the Supreme Court rejects, specifically rejects the reasoning on which the prior decision was based, that prior decision is no longer binding on us? That's true, Your Honor. And I was just checking my notes. I couldn't remember which one of you said that earlier. But yes, that is the situation. And often that's a difficult inquiry because it's hard to tell whether they exactly rejected our reasoning or not. But this is an instance where, like, they basically quote our reasoning and say, we simply cannot agree with this. Nothing about the phrase prior occasion permits that reason. And they could have picked several of the other circuit courts to sort of draw a distinction. I'm not sure that matters. But the point is, it's exactly... There's not ambiguity about whether they rejected our reasoning. And if you look, my judgments, or two judgments, was that if you look at that hypothetical at the end of Coleman, where they say, well, that's not before us, but we decide this case on prior occasion, and they specifically zeroed in, instructively gave us a point to that prior occasion language. And then you go back into Coleman earlier, and they say... Well, we're not going to read tea leaves to suggest that in reserving the question, they somehow answered it. Right? I mean, they reserved the question. We get that. The question is whether the logic of Coleman, as it sets out, right, that prior occasion does not mean dismissal plus appellate review, that prior occasion treats trial and appellate stages differently. And that's based on the language, that prior occasion is defined, right, as an instance where an action is filed or an appeal is taken. Right? So they... The 1915 defines it. But that's based on the rationale of Coleman, not reading the tea leaves about a reservation of rights. Yes. And that gives us the opportunity to argue it. But I do believe that the way they define prior occasion answers the question... What are you referring to exactly? I'm sorry, Judge? Where are you... What are you looking at? If you look at page 1763, the court points out... Oh, before they get to the reservation. Yes, ma'am. If you look at page 1763, where the court is actually talking about the argument made in the Hensley case, because the brief for the petitioner, for Petitioner Coleman, brought up that, and they quoted Hensley there, they move on to say, at that point, we find it difficult to agree. Logistically speaking, we see nothing about the phrase prior occasion that would transform a dismissal into a dismissal plus appellate review. In my reading, prior occasion is answered. It means three occasions, not three plus, not four. They looked at... And that's on a plain reading analysis of the statute. They're not looking at intent. They're analyzing the plain language of section 1983 and said there is no ambiguity. Prior occasion means three cases, that's it. And that's true under the statute and under Coleman, whether it's a dismissal at the trial court level or an appeal. And 1915 makes that clear by talking about dismissal or appeal. And I believe earlier, prior to that page right there, the page before that in Coleman, specifically defines what dismissal is. And it says, you know, this notion of finality is not in the statute. The statute says what it says. So the exception language, what's that, Victor? I'm sorry? The exception language in Coleman. What is that, Victor? The exception language? You mean related... The reservation. The reservation. What's that, Victor? The hypothetical? We're just ignoring it? It's not hypothetical. It's not dicta. They didn't say I was wrong, but they didn't say the appellant was correct. But they did say in this case they defined there is no finality in 1915, and they defined prior occasion. And if you look at a plain reading of, which we have to do today, if you apply the plain language review of 1915, the first thing out of the box is, Judge, you wrote in the Blakely v. Ward case several paragraphs there about how we're supposed to get to that. When you do that plain language analysis, we don't really need to jump to the question of intent. And the point is that where a court says we're only deciding the case in front of us, we're not issuing advisory opinion about facts that are not before us, we don't read that as taking a position one way or the other. We just read that as saying they're doing their job deciding the case before them, not addressing a case that's not before them one way or the other. I agree wholeheartedly that the Supreme Court did not answer this question, but I do believe that they gave instructions on how the answer should be reached when you look at how they define prior occasion. Maybe there's a fundamental question here in terms of how we view circuit precedent. And where you have a case, as Hensley did answer this question, the Supreme Court says we're not going to decide it. You can say, well, you've got to look at the Supreme Court having criticized it. That's the end of Hensley. Or you can look at it, and probably the way I look at it is this court decided. They want to overrule it. They could have done it. They didn't do it. And it's there, and maybe it goes back to the Supreme Court and they make that determination. But I find it very difficult to ignore the fact that a panel of this court decided this question. The Supreme Court reserved it, which means they didn't overrule it, which means they just reserved it and left it in place and knew what they were doing when they left it in place. Yes, sir. And it's been answered here. Yes, Your Honor. I believe that the reservation left it right there unresolved, but I do believe that when you look at it. Unresolved except to the extent that that panel had resolved it here. Well, the panel had resolved it here on the basis of a question of ambiguity. When you look at Hensley and how it's defined, it is basically set up on the question of we think that 1915G is ambiguous. The Supreme Court looked at the same statute and said we don't see an ambiguity there. We think all these questions finally have been answered. We know what dismiss means. We know what civil action or it's a conjunctive civil action or appeal. We know what that means. There is no issue of finality on appeal. We think everything has been resolved. All the defined terms in that simple statute have been defined. Actually, one of the questions I think in that statute that is not resolved is that if you look at the statute, the first three words in it say in no event, and I haven't found a court case that really talked about that, but I think that applies here. In no event do you end up with a prisoner, an IFP applicant, with three strikes who gets to then go into court, either court or appeal. In no event should that happen. That's what the statute says. I think the Supreme Court in Coleman directs us to look at the specific plain language under their analysis, and I believe it abrogates Hensley. If you look at the Ritchie case, they just sort of briefly mention Coleman and jump right into the answer they wanted to get to. There's no significant analysis there.  Thank you, Your Honor. May it please the court. I'd like to mention opposing counsel said that there was no way around the Supreme Court's definition of prior occasion, but that's provided directly in the Solicitor General's brief on page 11, in which the Solicitor General says that it doesn't count as final when the decision would become unreviewable on appeal. So that exact situation there is envisioned in the Solicitor General's brief and noted that when a decision would become unreviewable, that it's not considered final. And that's in line with the Supreme Court's reasoning in Coleman that the finality of district court judgments is somehow involved in the decision of whether or not they count, and it's not final when it's not reviewable. So that's what happens to the third strike. That's why the third strike should not prevent appellate review of that strike. And then, again, I agree with the points brought out by Judge Wynn earlier that the Supreme Court left this question unanswered, and it has been answered by this court in the Hensley case, and we ask that the court continue to allow Mr. Taylor to have appellate review of the imposition of his third strike and have meaningful access to this court to performance appellate function. Thank you. Thank you very much, Mr. Coyne. I understand that you also are court appointed. We very much appreciate your efforts and the efforts of the clinic. I know there probably were your colleague here and a lot of other folks helping with this. We appreciate it. We will come down and say hello to the lawyers and then go directly to our last case.
judges: Diana Gribbon Motz, James A. Wynn Jr., Julius N. Richardson